And with that, we'll move to our first case on the calendar for argument, 17-55536. And counsel, I'm hoping you can help me with the pronunciation of this name. Fewell, Your Honor. Fewell? Fewell. All right. Fewell v. State of California. Whenever you're ready, we're ready to hear your argument. Thank you, Your Honor. With regard to the time, I would request to save, if possible, six minutes. Yep, just keep an eye on the clock there. It'll count down, and that'll be just fine. So when we look at a case like this, we start with the fact that the officer's version of events could not have happened. It is factually impossible. There is positively no way, when looking at the physical evidence in this case, that his person could have been struck by the fuel vehicle. And there's also possibly impossible for the fuel vehicle to have struck any oncoming motorists that were coming on the freeway. But isn't the question whether it's possible for the officers to have reasonably thought otherwise? It could be wrong. It is wrong. Right. They just can't be unreasonable and still get qualified immunity. So could you speak to that, please? Yes. Specifically, with regard to the first prong of qualified immunity, it does require a Fourth Amendment finding. And along those lines, I think it's instructive, and I'm glad that you brought that up. The issue is, is there enough evidence to go to a jury? In other words, is there enough plausible basis for a jury to conclude two things in this case? A, that the force that was used was unreasonable, or B, in the context of the 14th Amendment claim, that Officer Sanchez acted with a purpose to harm unrelated to a legitimate law enforcement objective. And when we look at what this Court has done over the years, there have been routinely cases like this in which the Court has said, if certain factors are present, summary judgment is not appropriate. One of those factors is an internal inconsistency between an officer's statements. We have the statement that Officer Sanchez gave on the night of the incident, saying that he thought the truck was going to hit him, hit me. And later in the brief, years later, he modified that to say, I thought the fuel vehicle was going to hit my vehicle, and because of it hitting my vehicle, it would have caused the door to, caused me to be trapped under the door, or it would have somehow caused me to be trapped under the cruiser itself. And considering the layout and considering the video in this case, we know that that just couldn't happen. But more significantly. The truck did hit the patrol car, didn't it? It did. It hit the patrol car. And at the point where the truck hits the patrol car, the two of them are pretty much blocking the intersection, correct? Yes. It's a pretty busy street, right? It's not a busy street. It's a residential neighborhood. But there were cars coming? There was a single car coming, and I'm glad you brought that up. Because when we look at the video, and this is something that wasn't briefed as well as I thought it might have been. When we look at the video and you see the headlights of that car coming down the street, you will notice the car significantly slows. Obviously the driver of the motorist in that car sees what's going on and sufficiently slows prior to the onset of the shooting. So this concept that somehow this pickup is going to be able to breach the CHP cruiser and get into the street and hit this car, it's also belied by the actual video evidence because when we look at that, there's no way that the car would have even been in the path of that, of the fuel vehicle. At some point the truck breaks free, doesn't it? It goes over a curb. But when you say, when the court says breaks free, I think that that might imply that it was able to get into the residential street  We've seen the video. I've seen the video, watched it a number of times. The truck backs into the patrol car and keeps backing in, and you can hear the tire spinning and the smoke coming from the tire. But at some point doesn't the truck break free of the patrol car? No, I don't see that in the video, Your Honor. I'll look at it again. Yes, my view of the video is that the shots are fired into the truck. The truck has got its wheels spinning in reverse, and after the cessation of the shooting, the wheels are spinning in reverse over and over again, so much that you see burning rubber actually obfuscate the view of the camera. But it absolutely does not break free from my recollection. Okay, I'll look at it again. Thank you. So why was it unreasonable? Again, he can be wrong, just not unreasonable, and still get qualified immunity. And your brief cited to Cruz, which is a case that's similar in some ways. It's a police officer shooting case involving a person sort of similar. I know you're familiar with it. But in that case we did reverse an entry of summary judgment and send it back because we thought that a jury could disagree. The facts in that case seem so different, and that's what would be helpful for me if you could maybe hone in. In that case, several officers had testified that the decedent got out of the driver's vehicle. And then, of course, when all the dust settled, he was found still in his seat belt. So it could not have been the case, or at least that was certainly appropriate for a jury to find. But here, we have watched the video, and they're shouting, shouting, shouting to stop. He doesn't stop. He continues to try to extricate his vehicle. Correct. Why was it unreasonable for the officer to think that he was in harm's way or that the truck, if it broke free, would create a public danger by going off into the street? Well, Your Honor, specifically in terms of his perception, we have to determine. His Sanchez or his? Sanchez, specifically. I'm talking about Officer Sanchez's perception. I think the issue is whether a reasonable juror could conclude that his stated belief is something that they would disagree with. In other words, he is stating that I believed my life was in danger. I believed that the lives of the oncoming motorists were in danger. So forgive me for interrupting, but I can't tell from your brief. Is your theory that a jury could decide that he was not truthful? Or is your theory that a jury could decide that it was unreasonable for him to have that belief? It would be more the latter. But specifically, when we have a factual impossibility, the obvious question is, we all know he made a mistake. We all know he got it wrong. He's saying that the fuel vehicle was going to do things that it couldn't do. The issue is, if there was a reasonable officer in that same position, faced with that same set of circumstances, would that reasonable officer get it right? The fact that he got it wrong, by its very nature, suggests that a reasonable officer that was in that same position might perceive the events correctly, might act in a manner that was consistent with the physical training. And one of the reasons why we put the photograph depicting Sanchez's perspective in the reply, we actually photoshopped it in, is because that, I know it's not typical. No, it's more typical than you might think. It's fine. Go ahead. I felt a little embarrassed, but I wanted to show that picture. When you see this perspective, that truck is not coming anywhere near his person. Now, we all know that you can't use deadly force for property damage. And he cannot kill the driver of the pickup out of a stated fear that he believes that the pickup is going to hit his car. It has to pose an imminent threat of death or serious bodily injury to him. And when you look at this perspective and you look at the situation that he's faced, the fact that he got it wrong creates a genuine issue of fact just on its own, because if a reasonable officer were in that position, it stands to reason that a jury could conclude that he would perceive what was happening correctly. And did I answer your question? I think you did. Okay. The other issue that I really would like to draw the Court's attention to is the number of shots that were fired. Twelve shots versus one. He literally emptied his clip. He fired every round that was in his gun. There has been a reference to the fact that Plumhoff and other cases say that if an officer has a reasonable belief that shots should be fired, that he should shoot as many times until the threat has ended. And we don't disagree with that. We don't disagree with that as a principle. But the concept of the number of shots that were fired here does not on its own presuppose the reasonableness of the amount of shots. It doesn't on its own mean that because he fired 12 times that all 12 shots were reasonable. And that fact is starkly illustrated by the fact that his partner, Sorenson, who is on the scene, who is really close to him, who is seeing everything that he's seeing, does not choose to fire that many times. He fired once. He fired once. And if you look at the video, we've calculated that four seconds, there were four seconds of additional firing, which may not sound like a lot to a layperson, but a lot of shots can be fired in four seconds. And when you understand that, you realize that simply the fact that he is saying I had to fire 15 shots, standing alone, or 12 shots, standing alone does not mean that every bullet that was fired was reasonable. And that's a point that I thought was significant. And if the Court has any further questions, I'll answer them. I think you wanted to reserve some time. You've got five minutes left. I did. All right. Thank you very much, Your Honor. Thank you. We'll hear from the State. Good morning, Your Honors. May it please the Court. Deputy Attorney General Donna Dean on behalf of the State of California and Officer Martin Sanchez. I would put to you that the summary judgment in this case should be affirmed for three reasons. First, there's no genuine dispute of material fact in this case. Second, the use of force in this case was reasonable, objectively reasonable, and it was not for a purpose to harm unrelated to a legitimate law enforcement purpose. And finally, although the Court below didn't reach it under the second prong of qualified immunity, there's no clearly established law demonstrating that Officer Sanchez's conduct was indisputably unconstitutional. Going first to the issues of fact and the discussion about the expert. First, actually, I'd like to point out some of the undisputed facts in this case, and Judge Fischer carefully went through all of the evidence and laid out in her opinion all of the facts, undisputed and disputed, and her reasoning with respect to everything. There's no dispute that Mr. Pugh was reported as a reckless driver, a possible drunk driver driving on the wrong side of the road, and, in fact, it was confirmed later by his toxicology that he was at a .36 blood alcohol level. It's not disputed that he ignored repeated commands to stop the truck and put his hands up. It's not disputed the position of where Officer Sanchez was standing, where Deputy Sorensen was standing. Those issues are not disputed. The positions of the vehicle are not disputed. The path and direction of movement of the vehicle is not disputed. And it's not disputed that the truck suddenly lurched backwards before the firing happened. And then with respect to the expert's report, that does not create a tribal issue of dispute of material fact because it's not questioning the credibility or the veracity of Officer Sanchez's statement, like in cases such as Cruz and George, which are cited by the plaintiffs. It's actually questioning whether his belief was reasonable or not, whether or not he accurately predicted the future path of that truck, whether or not he had the ability to determine, based on physics, based on electrical or mechanical engineering knowledge, whether he could figure out whether that truck was going to hit him, hit his car, whether it was going to run him over. The opposing counsel said he's got two theories. He thinks a reasonable jury could find that the officer's belief that he was in danger was unreasonable or that a reasonable jury could find, I think, from the inconsistencies or the different way he stated this in the aftermath, that a reasonable jury could find that Officer Sanchez was not truthful. Going to the first issue about whether a reasonable jury could find that the belief that he was in imminent danger was reasonable or not, again, it's all based on this expert's report, a mechanical engineer with a Ph.D. who is calculating things after the fact. This has to be viewed from the perspective of the officer on the scene and whether or not his belief at that time was reasonable. You can't do 20-20 hindsight. You can't do armchair quarterbacking. This officer had seconds to react to a two-ton truck coming at him. Right, and so we appreciate that. It's well briefed, and we know that part. So could I ask you to focus on the other part of his argument, which is that another officer there that night shot just one time, and this officer shot 12 times. What is your response to that, please? Well, it's twofold. One is it shows that another officer on our side, it shows that another officer reasonably believed that Officer Sanchez was in imminent danger. With respect to the fact of who fired when and how many times, I don't believe that their expert is a mechanical engineer. He's not a ballistics expert, so his opinions in that regard are questionable. But even so, even if you took his opinions as correct, the one shot that actually hit Mr. Fuel, according to their expert, was fired one or two seconds after Sorenson's shot was fired. And they're standing in different positions, and actually that photo in Appellant's reply brief shows you that Deputy Sorenson was more to the side of the vehicle, whereas Officer Sanchez was more behind the vehicle. And so their perceptions are slightly different as to when the threat ended. But as Plumhoff states, if an officer reasonably believes that there is a threat, he can fire until he perceives that the threat has ended. Was there any testimony at all about whether or not either of the officers had time to step out of the way, to just move out of the trajectory of the truck? There was. I think there was. I'm sorry that I don't recall that off the top of my head, but when you see the position of where Officer Sanchez was standing, he's between the CHP patrol car and the San Barbara County Sheriff's patrol car. So he's in a position where he really can't move. And they're tactically trained to – they don't backpedal because you can trip over pavement. You don't turn and run. You don't turn your back. Is there testimony to this effect? What you're just describing now is something I don't think I know from the record. The training and tactics? Yeah. If there is, I don't think it was cited in the – I don't think it's in the record, so please limit yourself to the record. But there's – the only way he could get out of that path or that area where he was in would have been to go backwards around one of the vehicles. There was no path for him to go sideways. And you can see that in the video. You can see that in the photo. We've got the photo right here. Yes. Thank you. The truck backs in and hits the patrol car. Yes. And it's in reverse. Wheels are spinning. And the officers fire. When they finished firing, what was the position of the truck? What was it doing? My recollection from the video is that the wheels were still spinning. Yeah. And it was – but you were speaking with plaintiff's counsel about whether or not it had broken free. To my knowledge, it was never hooked in a way where it was connected where it couldn't have broken loose. But it was – But he's correct that it did not break loose. It didn't go forward. But isn't there sort of a lurch backwards just before the shooting? That's correct. Yeah, I think that's what we're remembering. And that's the point on which the focus should be is that's the split second where Officer Sanchez had to make the decision as to what to do in that split second with that truck coming backwards toward him, toward his patrol vehicle. The issue about the inconsistency of the statement, I think that's really just a red herring. He said in his initial statement after the shooting incident that he was afraid the car was going to – his words were, I was scared he was going to hit me. He didn't specifically say he was going to strike my person, he was going to hit my car, he was going to drag me backwards. He just said I was scared he was going to hit me. Nothing that he's said since then has been inconsistent with that. He's said in his deposition testimony that he was afraid he would get struck by the truck. He was afraid that the truck might hit his patrol car and push backwards and trap him under the car or the door. It's all consistent with the idea that he reasonably feared that he was in an imminent threat to his physical safety or his life. Let me – I'm sorry, go ahead. Go ahead, please. What would be the consequences of a jury believing the expert testimony in this case? I think in that case then you are putting – you're applying the wrong rule and the wrong perception to the issue because it's – you have to look at it from the perception of the officer. That's not the question. Yeah. I'm trying to figure out whether or not – we're talking about a summary judgment and we're saying that judges looked at all of the evidence. Either the law does not permit the judge to consider the expert testimony meaningfully on these standards or these burdens of proof or if the judge does or if a jury were to consider this testimony, would a jury then be accomplishing anything? How does that advance the ball, if at all? I don't think it does because it's not looking at it from the perception of the officer on the scene in the moment of the incident. It's looking at it from hindsight, armchair quarterbacking. Somebody with a professional degree is looking back at the arcs and the trajectories and the physics of the force of the vehicle. This is unlike Cruz and the George case, also cited by plaintiffs, where the experts in those cases, the coroner, for instance, the autopsy report, they actually conflicted with the statements of the officer as to what happened that night. We don't have that kind of conflict here. So the expert testimony doesn't conflict with anything that the officers said in their statements and in their – that was presented to the court? Correct. All it does is set up an argument that Officer Sanchez was mistaken in his belief that the truck could harm him. And if that argument alone isn't sufficient to get judgment against Officer Sanchez. No, we're talking about going to a jury as opposed to whether or not he wins. That's not the issue. The question is whether or not the summary judgment should be sustained, whether or not a fact question is raised in that regard. That's all I was asking. Yeah, and that's how I would distinguish it. The other cases actually call into question what happened that night. We don't have that kind of dispute here. We know where everybody was positioned. We have the video that shows it. The expert is only calling into question whether or not Officer Sanchez's belief, whether he was mistaken as to whether or not his – what the level of harm he was facing at that point. Okay. And then just a couple other quick points. Back real quickly to the issue of the 12 shots versus the one shot. As I said before, Deputy Sorensen was in a different angle. He wasn't looking at the truck from behind coming toward him. He was looking at the truck from side going backwards. So his perception as to when the threat ended, if it was a few seconds before Officer Sanchez, I think that's insignificant. Looking at the qualified immunity question, the clearly established law question, plaintiffs have not cited any controlling authority or robust consensus of authority to show that Officer Sanchez's conduct was indisputably unconstitutional in this case. They don't cite a case where an officer in a similar situation has been held to have acted unreasonably. They're also defining the clearly established law at too general of a level. They're defining it as Fourth Amendment says you can't use unreasonable force. Fourteenth Amendment says you can't act with a purpose to harm unrelated to a legitimate law enforcement purpose. But they're not digging down to what the most recent U.S. Supreme Court cases have said about the level of specificity that's required for the clearly established law part of the qualified immunity analysis. They also cite several cases which are distinguishable on their facts and so they don't help with the clearly established law because there's cases where the officer was standing beside the truck when he fired or the vehicle when he fired. The officer was clearly out of the path of the truck, clearly not in danger. And then some of the cases like Adams and Acosta, there's just a lot of distinguishing facts in those cases that take it out of the realm of clearly established law. I just wanted to point a couple of those cases. They're in your brief? They're in the brief or they're cited in plaintiff's briefs. Plaintiff cited a few new ones in the reply brief that I didn't get a chance to address. I don't know how it's pronounced, Latitz or L-A-T-I-T-S. In that case, the officer was at the side of the vehicle when it moved backwards. In Sigley, the officer said he shot when the car drove at him, but the autopsy showed he was shot in the back. So basically the autopsy in that case disputed the account of the incident that the officer gave. In Cordova, the suspect was shot in the back of the head and the side as he was fleeing, moving away from the officer. So that's distinguishable. In McCaslin, there were some disputes about whether the truck drove in the direction of the officers or not, whether it even drove at all. And there's no video like there is in this case. And then Cowan is also another case where the officer was at the side of the vehicle when he fired. So none of those cases help us with the clearly established prong of the qualified immunity because they're not similar enough to this case where an officer is standing behind the truck. And even if you want to talk about the officer standing behind the truck between two patrol vehicles there. With respect to the 14th Amendment, I know I'm running short on time here, there is absolutely no evidence of a purpose to harm unrelated to a legitimate law enforcement purpose here. The case mainly relied upon by the plaintiffs, the AD v. State of California, had several material factual disputes. In addition, there was evidence to demonstrate that there was a provocation of the officer in that case. None of that is present here. And finally, just on the state law claims, obviously the battery claim follows along with the Fourth Amendment claim. And then the negligence claim, there's no indication of any negligent pre-shooting conduct by Officer Sanchez here. So based on all of that and what's in my brief, I would argue that this judgment should be affirmed because there's no dispute of fact. Their use of force was reasonable. There was no purpose to harm. And in the alternative, Officer Sanchez is entitled to qualified immunity. Thank you, Counsel. Thank you. As this Court has repeatedly held, one of the issues that's presented by an officer-involved shooting is that more often than not, the officer is the only surviving witness. And that's the same situation that we have here. So when you have a statement that says, in essence, I feared for my safety, we can create a factual dispute simply by demonstrating that that statement is one that a reasonable judge or a reasonable jury may disagree with. That is a self-serving statement. And with regard to this case, I have to take issue with a comment that was made by Counsel, such that Mr. Sanchez or Officer Sanchez couldn't get out of the way. He is standing behind this door throughout the incident when he's shooting. At the point of impact, the impact is so slight that the door doesn't even close. He could have easily stepped to the side. And with regard to the factual record, I'd like to turn the Court's attention. But he asked about that in his deposition. Right here. I've got it in his deposition. Okay. And I will actually point the Court to, it's R256, page 62 of his deposition. Question, why did you start firing? Answer, I was in fear for my safety. What in fact caused you to fear for your safety? The vehicle was backing towards me. Why did you stop firing? I was able to move to a position of safety. So you stopped firing because you were able to move to a position of safety. Is that correct? Answer, yes, the threat had stopped. He was in the exact. So specifically, I looked for, because I've got that photo on my screen. Okay. Specifically, was he asked whether he could have just stepped out of the trajectory of the pickup truck? With regard to that, he was asked that. But essentially what he said was, I chose not to. So what page do I find that on? Is that what you just read from page 256? In looking at the circumstances surrounding that, it would take me a minute to find it. That's all right. Your time is ticking, so go right ahead, and I'll take another look myself. If I may, Your Honor, the discussion. If you think it's in there, I'll take another look myself. Is your answer that you think he was asked about why he didn't step out of the way? What he was asked was, after the shooting stopped, he was asked what he did, and he said, I moved to the back of the vehicle, and I asked were you able to do that before the car came, and he had to concede that he was. So we can find that. All right, thank you. Now, the other issue has to do with the concept of the expert. Now, this case did not turn on the pens of the expert. The expert merely said that this was factually impossible. Now, this is not a police practices expert. He doesn't have any opinions about the reasonableness of the officer's shooting. He's a scientist, and he's saying this couldn't have happened. But if you even look at the photo, you can determine that his ---- You say couldn't have happened. Do you mean his ---- I think his ---- my understanding is that his opinion is that the officer was not in fact in danger, and he didn't opine about whether the officer may or may not have reasonably believed he was in danger. He just said he wasn't. That is correct. Okay. And, Your Honor, that's a very important point because he's not taking this away from the jury. If it was a police practices expert who just brought out an opinion that I think this is unreasonable, I would understand Ms. Gein's concern. But here he's simply saying that he is not in the path of the vehicle. He could not have been struck. And his testimony is that I thought the door was going to kill me or I thought that I was going to be trapped under the car. And the impact is so slight that the door doesn't even move. So those facts alone could suggest to a reasonable juror that, hey, he overreacted. He responded to a situation and his mere statement is not going to be enough. And briefly with regard to the statements as it relates to qualified immunity, I point the Court to Mullinex v. Luna at 136 Supreme Court 305. We do not require a case directly on point, but existing precedent must have placed the statutory constitutional question beyond debate. And here the issue is if you are shooting into a car from a position of safety, would that violate the Fourth Amendment? That is the issue and that has been decided over and over again by this Court. We have the Acosta case. We have the Adams case on which I believe Justice Hawkins was on. I appreciate the elevation, but I'm just a judge. Okay. Thank you, Your Honor. We have several. And with regard to the Fourteenth Amendment claim, the A.D. case is directly on point because it does demonstrate that the officer fired into a car. He was firing from a position of safety. And as a result, the verdict that there was a purpose to harm unrelated to a legitimate law enforcement objective was upheld. I am out of time, I believe. I think your assistant may have the page number if you want to just give it to us. Yes. Don't read it. Just tell us the page number. Page 70 of the deposition at R260. Thank you, counsel. Thank you, counsel. Thank you very much. Thank you. You can buy her lunch. Thank you both for your arguments. Thank you very much, Your Honor. Thank you, Your Honor. We'll go on to the next case on calendar, please. 17-55565, AmeriCare Meta Services v. City of Anaheim.
judges: Hawkins, Christen, Hoyt